<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCYCOURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :        Chapter 11
In re:                                                      :
                                                            :        Case No. 07-35795 (cgm)
        JAMES F. LYONS, III,                                :
                                                            :
                                        Debtor.             :
                                                            :
------------------------------------------------------------X

**MEMORANDUM DECISION ON OBJECTION
TO DEBTOR'S CLAIM OF EXEMPTION**

<u>**A P P E A R A N C E S**</u> **:**

Arthur Winston, Esq.
Winston & Winston, P.C.
295 Madison Avenue
New York, New York 10017
*Attorneys for Caraleasing Inc.*

Thomas Genova, Esq.
Genova & Malin
Hampton Business Center
1136 Route 9
Wappingers Falls, New York
*Attorneys for the Debtor*

**CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE**

        Creditor Caraleasing Inc. ("<u>Caraleasing</u>") objects to this Chapter 11 Debtor's

claim that eight annuity contracts with an aggregate value of approximately $6.4 million[1]

(the "<u>Annuities</u>") listed in Amended Schedule C to the Debtor's petition are fully exempt.

The Court finds that under New York's exemption scheme, specifically New York

---

[1]        Six annuities are valued at $850,000 each, two are valued at $650,000 each.

Insurance Law §3212(d)(1), the Annuities are at least partially exempt. Insurance Law §
3212(d)(2) provides that:

> [T]he court may order the annuitant to pay to a judgment creditor or apply
> on the judgment in installments, a portion of such benefits that appears
> just and proper to the court, with due regard for the reasonable
> requirements of the judgment debtor and his family, if dependent upon
> him, as well as any payments required to be made by the annuitant to other
> creditors under prior court orders.

An evidentiary hearing is necessary in this case to determine whether it is "just and
proper" in this case to order the Debtor to pay a portion of the Annuities to creditors
through his Chapter 11 plan, taking into account the "reasonable requirements" of the
Debtor and his dependents.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28
U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge
Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. §
157(b)(2)(B) ("allowance or disallowance of claims against the estate or exemptions from
property of the estate").

## Background[2]

The Debtor commenced this case by filing a voluntary petition under Chapter 13
of the Bankruptcy Code on May 31, 2007. Thereafter, the Debtor voluntarily sought
conversion of the case to Chapter 11, which was approved by order dated September 25,
2007 (Electronic Case Filing ("ECF") Docket No. 22).

---

[2]      The information contained in this section is taken from the Debtor's bankruptcy filings and the
statements of Debtor's counsel at a Chapter 11 status conference. The facts cited in this section do not
constitute findings of fact by the Court.

The Debtor suffered a serious workplace injury in 1993, resulting in the loss of a leg and other severe injuries. *See* Debtor's "Response to Objection to Exemption of Annuities" (ECF Docket No. 50; hereafter, "Debtor's Response"), ¶3. The Debtor commenced a personal injury suit against certain defendants, which resulted in a "Settlement Agreement and Release," dated May 5, 1999, between the Debtor and the defendants' insurer and underwriters (Exhibit B to the Debtor's Response; hereafter, the "Settlement Agreement"). The Settlement Agreement provided for payment to the Debtor of immediate cash of $2.8 million and periodic payments over a 24-year period. As contemplated in the Settlement Agreement, the insurers and underwriters made "'qualified assignments' within the meaning of Section 130(c) of the Internal Revenue Code of 1986 as amended, of the … liability to make the periodic payments." Exhibits A and B to the Settlement Agreement reflect that the insurers' and underwriters' liabilities were assumed and assigned to eight different assignees, with each to provide future payments of between $34,243 and $36,254 per year, compounding 3% annually, commencing May 5, 2000 and continuing up to May 5, 2023. In turn, as provided in the Settlement Agreement, the Assignees funded their liability to make periodic payments by purchasing annuity policies. These are the Annuities that the Debtor lists in Amended Schedule C (ECF Docket No. 32) as fully exempt pursuant to the New York Debtor & Creditor Law (hereafter, "DCL") § 283(1).

Debtor's Amended Schedules I and J, filed on October 12, 2007, reflect monthly income and expenses of $18,267.88 and $17,568.89, respectively, resulting in monthly net income of $698.90 (ECF Docket No. 32). In the "Chapter 11 Statement of Current Monthly Income" (Official Form 22B) filed on October 19, 2007, the Debtor reports as

income an "Annuity Payment" of $43,276.04 (ECF Docket No. 36).  In the Debtor's

Statement of Financial Affairs, Item 2, the Debtor reports income of $344,855.13 for

2006, consisting of "Disability Income" of $11,544 and "Annuity Income" of

$333,311.13.

According to the Debtor's "Affidavit Under Local Bankruptcy Rule 1007-2"

(ECF Docket No. 30):

> The debtor's financial difficulties have been caused by the following
> circumstances: a business dispute regarding a taxi service business which
> led to a lawsuit commenced by the debtor's former business partner and
> the seizure of certain assets of the debtor.

The Debtor reveals in Item 4.b of the Statement of Financial Affairs that in May 2007 a

creditor, William Boyar, obtained a restraining notice and preliminary injunction in

Massachusetts state court against one of the Assignees, restraining one of the Annuities.

The Assignee commenced an interpleader action in this Court against the Debtor, Boyar

and other defendants, and the parties recently agreed to a settlement by which Boyar

agreed not to enforce the restraining notice and vacate the preliminary injunction. *See*

Adv. Proc. No. 07-9035, ECF Docket No. 12.

Caraleasing is listed as an unsecured creditor in Amended Schedule F to the

Debtor's petition with a claim of $68,914.64 for "Deficiencies on early return leased

vehicles."  Caraleasing filed an unsecured, non-priority proof of claim in this case for

$72,157.39, arising from monies due under six vehicle leases between Caraleasing, as the

lessor, and Accessible Disability Van Rentals of New York, Inc., as lessee.  The Debtor

signed for the lessee as guarantor.  It does not appear that Caraleasing has commenced

litigation or obtained a judgment against the Debtor for the amounts asserted in its proof

of claim.

- 4 -

Caraleasing filed an objection to the Debtor's claim of exemption (ECF Docket No. 46; "Objection"), contending among other things that: "The DCL does not allow annuities to be completely excluded from the bankruptcy estate. Only the amount the debtor reasonably needs to live on is exempt." Objection, ¶2. Caraleasing submitted a Reply (ECF Docket No. 51) to the Debtor's Response, as well as a Supplemental Reply (ECF Docket No. 52).

## Discussion

As set forth in 11 U.S.C. § 541, the filing of a bankruptcy petition creates an estate. Section 541(a)(1) states that, "[e]xcept as provided in [Section 541(b) and (c)(2)], all legal or equitable interests of the debtor in property as of the commencement of the case" are included as property of the estate. Here, the parties appear to be in agreement that the Annuities constitute property of the estate.[3] Section 522(b) of the Bankruptcy Code permits individuals to "exempt from property of the estate" the property exempt under applicable state or local law or under the federal exemption scheme set forth in 11 U.S.C. § 522(d). Because New York has "opted out" of the federal exemption scheme, residents of this state can only claim the bankruptcy exemptions permitted by New York

---

[3]     Neither party has seriously contended that the Annuities should not be included as property of the estate. Caraleasing argues that annuities may not be "completely excluded" from the estate but probably intended the word "exempted" (which it used in the next sentence and elsewhere in the Objection), rather than "excluded," because its legal arguments are based upon the New York exemption statutes discussed below. It also appears that the parties have not fully considered the extent of the Debtor's ownership rights under the Annuities. According to the Debtor: "It is not contested by the objectant that the debtor is the owner of the annuity contracts or that the debtor paid valuable consideration for the annuity contracts." Debtor's Response, ¶4. Yet Paragraph 6 of the Settlement Agreement provides: "Each Assignee shall be the owner of its annuity policy, and shall have all rights of ownership. The Assignees may have the annuity carriers … mail payments directly to the Plaintiff [*i.e.*, the Debtor]." As discussed below, the relevant statute is New York Insurance Law § 3212(d), which focuses on the "benefits, rights, privileges and options which, under any annuity contract are due or prospectively due the annuitant." Possibly, the parties have taken the fact that the Debtor is deemed to have provided the consideration for the Annuities and concluded that he is also the owner. Though the Debtor may not be the "owner of the annuity contracts" in all respects, there appears to be no dispute regarding the "benefits, rights, privileges and options" to which he is entitled under the Annuities.

law. *See* DCL § 284; 11 U.S.C. § 522(b)(2). Thus, the Court must decide whether the

Annuities are exempt under New York law, either in whole or in part.

The hub of New York's exemption scheme is DCL § 282, captioned "Permissible

exemptions in bankruptcy":

> Under section five hundred twenty-two of title eleven of the United States
> Code, entitled "Bankruptcy", an individual debtor domiciled in this state
> may exempt from the property of the estate, to the extent permitted by
> subsection (b) thereof, only (i) personal and real property exempt from
> application to the satisfaction of money judgments under sections fifty-
> two hundred five and fifty-two hundred six of the civil practice law and
> rules, (ii) insurance policies and annuity contracts and the proceeds and
> avails thereof as provided in section three thousand two hundred twelve of
> the insurance law and (iii) the following property:
>
> 1. Bankruptcy exemption of a motor vehicle. One motor vehicle not
> exceeding twenty-four hundred dollars in value above liens and
> encumbrances of the debtor.
>
> 2. Bankruptcy exemption for right to receive benefits. The debtor's right
> to receive or the debtor's interest in: (a) a social security benefit,
> unemployment compensation or a local public assistance benefit; (b) a
> veterans' benefit; (c) a disability, illness, or unemployment benefit; (d)
> alimony, support, or separate maintenance, to the extent reasonably
> necessary for the support of the debtor and any dependent of the debtor;
> and (e) all payments under a stock bonus, pension, profit sharing, or
> similar plan or contract on account of illness, disability, death, age, or
> length of service unless (i) such plan or contract, except those qualified
> under section 401, 408 or 408A of the United States Internal Revenue
> Code of 1986, as amended, was established by the debtor or under the
> auspices of an insider that employed the debtor at the time the debtor's
> rights under such plan or contract arose, (ii) such plan is on account of age
> or length of service, and (iii) such plan or contract does not qualify under
> section four hundred one (a), four hundred three (a), four hundred three
> (b), four hundred eight, four hundred eight A, four hundred nine or four
> hundred fifty-seven of the Internal Revenue Code of nineteen hundred
> eighty-six, as amended.
>
> 3. Bankruptcy exemption for right to receive certain property. The
> debtor's right to receive, or property that is traceable to: (i) an award under
> a crime victim's reparation law; (ii) a payment on account of the wrongful
> death of an individual of whom the debtor was a dependent to the extent
> reasonably necessary for the support of the debtor and any dependent of
> the debtor; (iii) a payment, not to exceed seventy-five hundred dollars on

<u>account of personal bodily injury, not including pain and suffering or
compensation for actual pecuniary loss, of the debtor</u> or an individual of
whom the debtor is a dependent; and (iv) <u>a payment in compensation of
loss of future earnings of the debtor</u> or an individual of whom the debtor is
or was a dependent, <u>to the extent reasonably necessary for the support of
the debtor and any dependent of the debtor</u>.

(emphasis added).

Caraleasing first argues that DCL § 283(1), the section immediately following

DCL § 282, applies here and limits exemption of the Annuities to $5,000.  Caraleasing's

citation to this section is understandable as this is the legal basis for the exemption cited

by the Debtor in Amended Schedule C.  A careful reading of DCL § 283(1) shows that it

is inapplicable to the Annuities in this case:

### § 283. Aggregate individual bankruptcy exemption <u>for certain annuities</u> and personal property

1. General application. The aggregate amount the debtor may exempt from
the property of the estate for personal property exempt from application to
the satisfaction of a money judgment under subdivision (a) of section
fifty-two hundred five of the civil practice law and rules and for benefits,
rights, privileges, and <u>options of annuity contracts described in the
following sentence</u> shall not exceed five thousand dollars. <u>Annuity
contracts subject to the foregoing limitation are those that are</u>: (a) <u>initially
purchased by the debtor within six months of the debtor's filing a petition
in bankruptcy</u>, (b) not described in any paragraph of section eight hundred
five (d) of the Internal Revenue Code of nineteen hundred fifty-four, and
(c) <u>not purchased by application of proceeds under settlement options of
annuity contracts purchased more than six months before the debtor's
filing a petition in bankruptcy</u> or under settlement options of life insurance
policies.

(emphasis added).  The Annuities at issue in this case were not purchased by the Debtor

within six months of the petition, and originated from the Settlement Agreement executed

eight years ago.  Accordingly, the $5,000 limitation in DCL § 283(1) does not apply to

the Annuities in this case.

DCL § 282 directs the reader to other New York statutes, including Sections 5205

and 5206 of the New York Civil Practice Law and Rules ("<u>CPLR</u>"), and New York

Insurance Law § 3212.  CPLR 5206 deals with real property and is not applicable here.

CPLR 5205 is captioned "Personal property exempt from application to the satisfaction

of money judgments," and addresses certain types of trusts, including annuity contracts,

in subsection (c), which provides in relevant part:

> **(c) Trust exemption.** 1. Except as provided in paragraphs four and five of
> this subdivision, all <u>property while held in trust for a judgment debtor,</u>
> <u>where the trust has been created by, or the fund so held in trust has</u>
> <u>proceeded from, a person other than the judgment debtor</u>, is exempt from
> application to the satisfaction of a money judgment.
>
> * * *
>
> 4. This subdivision shall not impair any rights an individual has under a
> qualified domestic relations order as that term is defined in section 414(p)
> of the United States Internal Revenue Code of 1986, as amended or under
> any order of support, alimony or maintenance of any court of competent
> jurisdiction to enforce arrears/past due support whether or not such
> arrears/past due support have been reduced to a money judgment.
>
> 5. Additions to an asset described in paragraph two of this subdivision
> shall not be exempt from application to the satisfaction of a money
> judgment if (i) made after the date that is ninety days before the
> interposition of the claim on which such judgment was entered, or (ii)
> deemed to be fraudulent conveyances under article ten of the debtor and
> creditor law.

The parties agree that under New York law, release from personal injury claims is

"valuable consideration" and any resulting settlement, such as the Settlement Agreement

in this Case, is deemed to derive from consideration paid by the injured party. *In re*

*Tappan*, 277 B.R. 491 (W.D.N.Y. 2002); *see also In re Lynch*, 321 B.R. 114, 118 (Bankr.

S.D.N.Y. 2005).  Thus, CPLR 5205(c) is inapplicable to the Annuities in this case

because it focuses on a trust that "proceeded from, a person other than the judgment

debtor."

In *In re Tappan*, Judge Carl L. Bucki held that the Debtor "paid the consideration

for" an annuity such as the one in this case (where the debtor received the annuity by

releasing her personal injury claims), bringing it within the language of Insurance Law §

3212(d)(1) and deeming the annuity "exempt from administration by the [bankruptcy]

trustee." 277 B.R. at 492.

> The language of Insurance Law § 3212(d)(1) speaks not simply to the
> payment of an annuity premium, but broadly to the payment of
> consideration.

*Id*. By releasing her personal injury claims, the debtor in *Tappan* was held to have paid

consideration for the annuity contract of which she was a beneficiary.[4] "Others may be

said to have paid consideration, but such characterization will not negate the debtor's

entitlement to exempt rights under an annuity contract for which she also paid

consideration." *Id*.

Because the parties agree that the Debtor provided the consideration for the

Annuities, the applicable exemption statute is New York Insurance Law § 3212,

captioned "Exemption of proceeds and avails of certain insurance and annuity contracts,"

which provides in relevant part:

> (a) In this section:
>
> * * *
>
> (2) An annuity contract includes any obligation to pay certain sums at
> stated times, during life or lives, or for a specified term or terms, issued
> for a valuable consideration, regardless of whether such sums are payable
> to one or more persons, jointly or otherwise, but does not include
> payments under a life insurance policy at stated times during life or lives,
> or for a specified term or terms.
>
> * * *
>
> (d)(1) The benefits, rights, privileges and options which, under any
> annuity contract are due or prospectively due the annuitant, who paid the
> consideration for the annuity contract, shall not be subject to execution.

---

[4]    Judge Bucki observed that if he had accepted the trustee's view in that case, that the debtor did not
pay the consideration for the annuity contract, "then the debtor would undoubtedly contend that the annuity
was a trust created by a person other than the debtor" and "might well be exempt as a spendthrift trust
under Debtor and Creditor Law § 282 and CPLR § 5205(c)." 277 B.R. at 492.

> (2) The annuitant shall not be compelled to exercise any such rights,
> powers or options contained in the annuity contract, nor shall creditors be
> allowed to interfere with or terminate the contract, except as provided in
> subsection (e)[5] hereof and except that the court may order the annuitant to
> pay to a judgment creditor or apply on the judgment in installments, a
> portion of such benefits that appears just and proper to the court, with due
> regard for the reasonable requirements of the judgment debtor and his
> family, if dependent upon him, as well as any payments required to be
> made by the annuitant to other creditors under prior court orders.

Insurance Law § 3212(d)(1) applies where, as here, the annuitant is deemed to have "paid

the consideration for the annuity contract."  Insurance Law § 3212(d)(2) permits a court

to order a debtor who receives a structured settlement annuity "to pay to a judgment

creditor or apply on the judgment in installments, a portion of such benefits that appears

just and proper to the court," after taking into consideration the "reasonable

requirements" of the judgment debtor, including the debtor's dependents and "any

payments required to be made by the annuitant to other creditors under prior court

orders."

The language in Insurance Law § 3212(d)(2) differs in several important ways

from provisions in DCL § 282(3) and Bankruptcy Code § 522(d).  DCL § 282(3) allows

debtors to exempt property traceable to wrongful death payments and payments in

compensation of loss or future earnings of the debtor, but only "to the extent reasonably

---

[5]     Insurance Law § 3212(e) addresses, among other things, assignment of beneficiaries or payment
of premiums or consideration "with actual intent to hinder, delay or defraud creditors."  In the Opposition,
Caraleasing claims:

> The debtor listed his structured settlement annuity as income on his loan application for
> this creditor.  In other words, he represented to the creditor that income from the
> structured settlement annuity would be available as income to pay his debts.  Had the
> debtor not listed his structured settlement annuity as income, the creditor would not have
> lent the debtor … money.  The debtor should not be allowed to represent to the creditor
> that income from the structured settlement annuity would be available to pay his debts,
> and then yank the rug out from under the creditor.

Objection, ¶12.  Assuming for the sake of argument that these facts, if true, would state a claim for fraud
regarding the Debtor's business transactions with Caraleasing, Caraleasing does not contend that the
Debtor engaged in fraud in connection with the Settlement Agreement or in obtaining the Annuities.  Thus,
Insurance Law § 3212(e) is inapplicable to the case at bar.

necessary for the support of the debtor and any dependent of the debtor." Bankruptcy

Code § 522(d)(10)(D) and (E) and 522(d)(11)(B), (C) and (E) have the same limitation,

allowing exemption of certain payments only "to the extent reasonably necessary for the

support of the debtor and any dependent of the debtor." By contrast, Insurance Law §

3212(d)(1) begins by stating that the benefits, rights, privileges and options due to an

annuitant who paid the consideration for the annuity contract "shall not be subject to

execution," which is to say, in bankruptcy parlance, that they are "exempt." Section

3212(d)(2) further provides that the annuitant shall not be compelled to exercise any such

rights, and creditors will not be permitted to terminate the contract, except that the court

*may* order otherwise with regard to a "judgment creditor."

Unlike DCL § 282 and Bankruptcy Code § 522(d), which limit the exemption of

payments to the extent "reasonably necessary," payments under annuity contracts may be

fully exempt under Insurance Law § 3212(d)(2) unless a court, in its discretion, decides

that it would be "just and proper" to order the payment of "a portion of such benefits" to

judgment creditors. Though it may make little difference in practical application, DCL §

282(3) and Bankruptcy Code § 522(d)(10) and (11) require analysis of annuity payments

that will be "reasonably necessary for the support of the debtor and any dependent of the

debtor" in determining the amount he or she may exempt, whereas the Insurance Law

requires that consideration when determining what portion, if any, would be just and

proper to pay to a "judgment creditor."

There is no evidence before the Court that Caraleasing is a "judgment creditor."

It should be noted that in addition to its application to bankruptcy exemptions, Insurance

Law § 3212 determines the property subject to execution by creditors who have obtained

state court judgments.  For bankruptcy purposes, state exemption statutes must be interpreted in the framework of bankruptcy law. *See In re Orso*, 283 F.3d 686, 690 (5th Cir. 2002) (interpreting Louisiana's statute for exemption of annuity contracts).  The individual rights that unsecured creditors may have outside of bankruptcy to execute on specific property must give way to the Bankruptcy Code's policy of an orderly, fair and equitable distribution. For example, the Court could not interpret Insurance Law § 3212(d) to order payment from the estate's interest in the Annuity to an unsecured "judgment creditor," to the exclusion of other similarly situated unsecured creditors. Whether or not it is a judgment creditor, Caraleasing is an unsecured creditor and entitled to the same treatment as any other general unsecured creditor of the bankruptcy estate. Fed. R. Bankr. P. 4003(b) permits any party in interest to object to the list of property claimed exempt by a debtor.  Caraleasing's objection to exemption of the Annuities, if successful, would inure to all creditors of the estate.  For the foregoing reasons, the Court interprets the reference to a "judgment creditor" in Insurance Law § 3212(d)(2) to extend to any party in interest in a bankruptcy case.

Aside from the open-ended "just and proper" standard, determination under Insurance Law § 3212(d) of the amounts that should be paid to creditors include the considerations present in DCL § 282(3) and Bankruptcy Code § 522(d), *i.e.*, the amount "reasonably necessary for the support of the debtor and any dependent of the debtor." This determination will require an evidentiary hearing. *See In re Corbi*, 149 B.R. 325, 331 (Bankr. E.D.N.Y. 1993) (evidentiary hearing necessary to determine actual amount reasonably needed by the debtor to support himself and dependents under future earnings exemption in DCL § 282(3)).  In *In re Fill*, 84 B.R. 332, 339 (Bankr. S.D.N.Y. 1988),

Judge Tinal L. Brozman conducted a trial to determine the funds reasonably necessary for

the debtor's support under DCL § 282(3) and interpreted the standards by reference to

UNIFORM EXEMPTIONS ACT § 6(b) (1976):

> The phrase "property to the extent reasonably necessary for the support of him and his dependents" means property required to meet the present and anticipated needs of the individual and his dependents, as determined by the court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt.

A recent case interpreting the phrase "reasonably necessary support" in Bankruptcy Code

§ 522(d)(11)(E) noted that the determination is "necessarily fact sensitive" and set forth a

non-exclusive list of criteria:

> (1) debtor's present and anticipated living expenses;
>
> (2) debtor's present and anticipated income from all sources;
>
> (3) the age of the debtor and his or her dependents;
>
> (4) the health of debtor and his or her dependents;
>
> (5) debtor's ability to earn a living;
>
> (6) debtor's job skills, training and education;
>
> (7) debtor's other assets, including exempt assets;
>
> (8) the liquidity of these other assets;
>
> (9) debtor's ability to save for retirement;
>
> (10) the special needs of the debtor and his or her dependents; and
>
> (11) debtor's continuing financial obligations, *e.g.*, alimony or support payments.

*In re Jackson*, 376 B.R. 75, 79-80 (Bankr. D. Conn. 2007) (citing *In re Williams*, 197

B.R. 398, 404 (Bankr. M.D. Ga. 1996)).

The record before the Court at this time lacks most of the basic information

required for such an analysis. To date, Caraleasing has only made general assertions the

Debtor could "easily afford to pay a [sic] 100% of his debts over time," and that "[a] six-

07-35795-cgm    Doc 55    Filed 01/30/08    Entered 01/30/08 11:46:56    Main Document
Pg 14 of 17

figure yearly income is more than enough to meet any 'reasonable requirements' the

debtor may have." Objection, ¶11.  Caraleasing opines that the Debtor "will not suffer

destitution and hardship if he is forced to make due with $8 million instead of $9 million;

to make due with a yearly [sic] with an income of $330,000 instead of $400,000," and

that the Debtor's "alleged expenses of $17,568.98 each month appears to be exorbitant

and totals over $210,000 a year." Objection, ¶¶15, 19. These arguments focus only on the

magnitude of the income and the expenses and Caraleasing's belief that this is "more than

enough" for the Debtor.  Caraleasing has not provided the Court with the sort of thorough

and meaningful analysis prescribed in *In re Jackson*, *supra*.

Other than suggesting that *In re Lynch* and *In re Orso, supra*, "clearly support a

finding" that the Annuities are "fully exempt," the Debtor makes no attempt to argue why

those cases would compel such a conclusion under the facts of this case.  *In re Orso*

interpreted a Louisiana statute and would not be dispositive in this case.  The annuities at

issue in *Orso* arose from a 1989 consent judgment providing for two monthly payments

of $1,180 and $850 to *Orso* for the longer of 30 years or his lifetime. 283 F.3d at 689-

690.  *In re Lynch* denied a Chapter 7 trustee's objection to a debtor's exemption of an

annuity in the amount of $117,571.  The debtor argued that if his annuity was invaded to

pay creditors, he would not have enough income to pay necessary living expenses. 321

B.R. at 116.  The Chapter 7 trustee's counsel indicated that he did not question the fact

that the debtor needed the annuity to cover necessary living expenses, prompting Judge

Lifland to observe that it was "unclear why the Trustee lodged this objection at all." *Id.* at

117 n. 1.

- 14 -

The parties clash over whether or not *In re Constantino*, 274 B.R. 580 (Bankr.

N.D.N.Y. 2002) and *In re Hill*, 95 B.R. 293 (Bankr. N.D.N.Y. 1988) are relevant to the

present case.  Neither case considers the exemption of annuity contracts in the context of

New York Insurance Law § 3212(d)(2).  *In re Constantino* rejected the debtors' claim

that certain wrongful death payments ($2,000 per month for life, referred to as "Monthly

Payments," and $570,000 payable in several lump-sums over 15 years, referred to as the

"Singular Payments") were fully exempt pursuant to DCL §§ 282(3) and 283(1).  The

Constantinos included the Monthly Payments as income during the 36-month period of

their proposed Chapter 13 plan.  Judge Gerling sustained the Chapter 13 Trustee's

objection to the exemption, ruling:

> Arguably, any monies in excess of that $72,000, including the Singular
> Payments, are not reasonably necessary for [the debtors'] support and
> should be available for payment to the Debtors' creditors.

247 B.R. at 583.  In *In re Hill*, Judge Gerling barred all of the exemptions claimed by the

debtor because there was "simply not sufficient information in the petition or the record

for the Court to determine the applicability of the New York State exemptions for,"

among other things "annuity contract entitlements" or "the right to receive benefits to the

extent reasonably necessary for his support." 95 B.R. 298.

Caraleasing's remaining arguments are not relevant to the issue of whether and to

what extent Debtor may exempt the Annuities.  Caraleasing claims it "relied on the

debtor's receiving income from the annuities when the creditor made the decision to loan

money to the creditor [sic], and the annuities were listed on the credit application."

Objection, ¶3.  Thus, Caraleasing argues that the Bankruptcy Code "does not allow

debtors to <u>exempt</u> debts incurred by misrepresenting their financial condition to their

creditors." (emphasis added).  Caraleasing appears to be confusing the separate

considerations of estate property *exempt* from distribution to creditors, and debts that may

be *excepted* from discharge pursuant to 11 U.S.C. § 523(a).  To the extent that

Caraleasing contends its claim should not be discharged because it arose from fraud or

some other wrongful act of the Debtor, that claim must be asserted in an adversary

proceeding pursuant to 11 U.S.C. 523(a). *See* Fed. R. Bankr. P. 7001(6).  Caraleasing

states that debtors may not "use the Bankruptcy Code to maintain an extravagant lifestyle

at the expense of his creditors," and that the Court "may find bad faith when there has

been 'abuse of the provisions, purpose or spirit of the Bankruptcy Code'." Objection, ¶13

(citing *In re Adler*, 329 B.R. 406, 410 (Bankr. S.D.N.Y. 2005)).  Caraleasing does not

specifically accuse the Debtor of bad-faith in connection with this bankruptcy filing and

does not provide any evidence of bad-faith conduct other than the grounds cited for

objecting to exemption of the Annuities, except to point out "significant discrepancies"

between the Debtor's Chapter 13 and Chapter 11 schedules that Caraleasing believes

"need substantial clarification as to debtor's income and expenses, to determine the

reasonable amount to support the defendant and his dependants." Objection, ¶¶17-20.

The Court agrees with Caraleasing that the record in this case is incomplete and, at times,

unclear; Caraleasing will have the opportunity to obtain discovery and examine the

Debtor in connection with the evidentiary hearing.  In its Supplemental Reply,

Caraleasing makes the following argument:

> The court should take note that the creditor relied on the annuity to enable
> the disabled debtor to obtain credit to commence a new business. This
> annuity is payable over 24 years and upon information and belief contains
> significant compensation for future earnings, which is passive income to
> the debtor. To rule the entire annuity exempt (after providing for
> reasonable living expenses) raises equal protection concerns since the

disabled with annuities will be penalized when seeking credit compared to
others with passive income. The increased cost of credit to start a new
business will have a chilling effect on the disabled.

(ECF Docket No. 52, ¶5).  Caraleasing suggests that if this Court rules that the Debtor

may fully exempt several million dollars of annuity payments, this might result in denial

of equal protection to the Debtor (or similarly situated debtors) if he applies for credit to

start a new business.  The Court's ruling that the Annuities are not fully exempt *per se*

obviates the need to consider this intriguing argument.  Moreover, the equal protection

claim hinted at by Caraleasing (without citing any legal authority) would belong to the

Debtor who, not surprisingly, has declined to assert it.

## **CONCLUSION**

For the foregoing reasons, Caraleasing's Objection to the exemption of the

Annuities is overruled in part.  An evidentiary hearing will be required to determine the

extent to which the Annuities may be exempted pursuant to New York Insurance Law §

3212(d)(2).  Caraleasing's Objection shall be treated as a contested matter pursuant to

Fed. R. Bankr. P. 9014.  The parties shall appear before the Court for a status conference

on February 19, 2008 at 10:30 a.m.  At that time, the Court will set deadlines for the

exchange of discovery and the submission of a joint pre-trial stipulation, identifying the

disputed factual issues to be tried.  As this is a Chapter 11 case, this objection will need to

be resolved expediently because the decision will determine the amount available for

distribution to creditors and directly impact any proposed plan of reorganization.

Dated: Poughkeepsie, New York
     January 30, 2008         _/s/ Cecelia Morris_____
                                       CECELIA G. MORRIS
                                       UNITED STATES BANKRUPTCY JUDGE